4-18-0709, Transport America v. Workers' Compensation Commission Council, you may proceed. Good morning, this is the Police Council. My name is Emily Miller. I am here on behalf of my client in the state of Transport America. I'm sure everybody's read the brief. The primary issue I believe in this case is whether Mr. Dorey qualified as a traveling employee at the time of his accident back in April of 2009. The Commission had found that he did not sustain an accident arising out of the course of his employment, and the Circuit Court reversed that holding, finding that he was a traveling employee and that his accident did arise out of the course of his employment. Can I get right to a critical point I think in the case? The Commission found that the claimant's reason, state of reason for returning to the truck to complete his trip records, was not credible. And they had legitimate reasons for doing that. They cited the testimony of Paula Smith, a claim specialist, who testified that she interviewed the claimant shortly after the accident, and she testified that the claimant did not report that he returned to his truck to complete the trip sheets. He only returned there, he said, for his coffee and laundry. So what do we do with the credibility finding of the Commission against the claimant? Can we substitute our judgment for that of the Commission on that issue? No, I don't believe so. I mean, I think that the Commission's finding that he was not credible with regard to that claim. He did not sustain it. But how would you win the case if he went to retrieve his laundry and his mug? How is that? You're representing the respondent, aren't you? Correct. I'm representing the respondent. So like I said, if you've read the brief, you know the facts. I mean, the fact of the argument is, was he a traveling employee at the time of the accident? After he comes back, he parks his truck in his big rig where he usually parks it at the end of a dead-end street, does his post-trip inspection, locks his truck down. He's done with his route. This is a Friday night. He's done with his route before the following Monday. His wife comes and picks him up, as is their usual standard for when he comes home from a route, and they go out. They go out to dinner. They go shopping. They're gone for four hours and leave. When he realizes, I left my bag and his coffee mug. I brought my wife and his truck, and that's when he left. But what if he had gone back for the trip sheet records? Wouldn't that fall within the ambit of part of his responsibilities? Potentially, exactly. I think he's gone back to actually do paperwork. Like I said, that doesn't make him sound like a problem, that he was going back for the paperwork. He never mentioned the paperwork in this case until the end of the hearing, when he provided the testimony. It's been always been, I went to grab my clothes, and it was primarily just Susan and her coffee mug, and that was life, and he was not on the route. What do you make of this settled doctrine? An injury sustained by a traveling employee arises out of the employment where he or she is injured while engaging in conduct that was reasonable and foreseeable. Did she hang her head on that? No, because he doesn't have an employee at the time. He arrived back home. He was done working. He left. He walked his truck down, and he left with his wife. What's to say that he hadn't gone out to eat and shopping, that when she came and picked him up, they went back home? They ate dinner, they watched a movie for four hours, and then he remembers, oh, I left my bag and the truck and my coffee mug. Is the argument then that he's taking himself back in the course of his employment? Well, that gets to is that reasonable and foreseeable. I mean, arguably, he has a load still on the trailer that he's apparently next Monday, that Monday, he's going to go and deliver. That is correct. Okay. But for that standard to apply, he has to be a traveling employee at the time of the accidental crash. And I think that's the primary question. If there's any gap between the time he locks down his truck, what if it's 20 minutes later and he realizes he's got to go back and take care of his trip record? As soon as he gets out of the truck and leaves, that's it? He can't go back? Well, I think you have to look at the cost, and I think you have to look at the level of mediation. Was it a substantial mediation or time frame break? Or was it an insubstantial? I don't think anybody can argue in this case that the four-hour break is in any way insubstantial. I mean, we're talking about four hours. He went shopping at the dinner with his wife. Like I said, I don't think it's any different than if he'd gone home, ate dinner at home, and watched a movie for four hours. And then remembers that he didn't bring his cell phone and goes back to the truck. I don't believe at that point that he places himself back into the position of a traveling employee at that time. And you don't get to that reasonable and foreseeable standard until he establishes being a traveling employee. And the Commission didn't believe it was at that time. Aren't there a couple of employer policies in play here as well? Specifically, there was, I think, a mandate to check in at the truck and working and also to perform the documentation, the paperwork, at the end of the shift. Yes, and he did not do that. And he admitted under testimony that he did not comply with my client's policy with regard to the completion of the paperwork at the end of each route. He was supposed to complete all of his required tripsheets and paperwork at the time he completed his route. So when he came home, that mattered. When he completed his route or when he completed his delivery? No, when he completed the route. When he arrived home from the route, whether he was loaded or unloaded, the testimony was that he was supposed to complete his paperwork, his tripsheets for that route, when he arrived back at the end of that route. It wasn't until midnight? I thought he had a certain later time, midnight of the night he returned to do it. That's when they had to be submitted. But they were to be completed when he finished his route. And when he came back to the truck on the next day... I'm still not... Are you sure of that factual basis? Because I thought he had to complete paperwork at the end of each delivery. And he made several deliveries during that week. Correct. But I believe it was the end of that route. So if he was at the end of a route, he'd be driven, dropped a load... Wasn't there testimony that he didn't do that? I mean... His testimony was that that was not his practice. To do what? To complete the paperwork at the end of the route. He would wait and do it at the end of the week. And then submit it... What's a route in your definition? I believe the route they testified to is he would run different routes. If he would leave from Danville, like loaded, and he would run a route, let's say, to somewhere in Arkansas. And he would drop a load and pick up another load and come back. That would be... So what's the route when he drops off at... I believe at each end of that route. Yeah, well, isn't that delivery? And pick up sometimes, I believe was his testimony. He would pick up a load and then drop a load and then pick up another load. What's he supposed to do when he drops off a load, according to the employer's requirements? As far as when... Paperwork. Well, the trip sheet? He had to complete the trip sheet. Thank you. That's what I was referring to. And he said he didn't complete those trips. It was not his practice, so the employer required him to complete the trip sheet. Is that fair? At the end of each delivery? Correct. That's what I was trying to drive at. We went around the hickory bush on that. So he wasn't doing that. He was doing his trip sheets all in one batch. Correct. When he arrived to his... You know, where he parked the truck for the weekend, right? That's what his testimony was. Okay. Yes. And that's what he was doing in the cab of the truck before he fell. That's what he said he was doing. Like I said, the commission did not find him credible on that. They noted that he testified that his wife waited in the truck for him for 30 to 40 minutes while he did this. But the wife didn't testify in that regard at all. So, I don't think he's credible in regards to the argument he was making in April. And I think based on the fact that he wasn't, he didn't place himself back into the course of the cab when, if any of the time of this accident occurred, you don't get to that secondary analysis. And I think the commission's decision was right. Because of that, he did not sustain a contestable accident under the Workers' Compensation Act. And for that reason, we'd ask that the Circuit Court's decision be referred. You want to address what the – I mean, you prevailed until it went to the Circuit Court, right? Correct. And what was – is there any error there at the Circuit Court level? Well, I think the NFES. I think the analysis that he was accounting employee, as well as their application – What was the standard of review that was used by the Circuit Court judge? The Circuit Court judge used an ELBO standard. Well, is that an error? I think it's an error. Commissioner Lambourne agreed that it was an error. You think it's an error? I believe it's an error. Oh, okay. My argument that it's an error. Oh, okay. Did you want to address that? I mean, I had argued and migrated before the Circuit Court that it should apply to NFS with other standards. They disagreed. I believe the appropriate standard is manifestly an error. I was just trying to get you to do it in oral argument. Make your argument. I mean, we're still in oral argument. I mean, I think based on the committee's decision that the facts are undisputed in this case. So it has to be a manifest way of the evidence. That's a flaw. Even if the facts were disputed, is it still a manifest way of the error analysis? What? I'm sorry? There's more of an argument that could be made there, like Mr. Lambourne's argument, in his defense. I don't think you want to retreat into an overall standard of review here. No, and I'm not arguing that there should be. I mean, obviously I argued in my brief that I believe in this case that it should be a manifest way of the evidence standard. Period. I don't believe counsel argued any differently. Are you done? Unless there's more questions. I don't think there are. Okay, thank you. Thank you. In the course of your argument that you addressed the issue that was hanging in the air, the commission found the claimant not to be credible. They had reasons for doing it, citing the testimony of the insurance adjuster, who claimed that the claimant said only he was going to achieve his mug in laundry and said nothing about work-related records. So how do you overcome that hurdle? And that would be what? If you look at the commission's language on page 810 of the supplemental appendix that I attached to my brief, the commission's decision reads, quote, while Petitioner was a traveling employee, he had already completed his route and was no longer on duty when he returned to his truck. In other words, the commission found he was a traveling employee, but they... Well, that linguistically is an interesting statement, isn't it? While he was a traveling employee, he was, while, seemed to be in conflict linguistically. So you're reading it. So if you're a traveling employee, that's... He was, arguably, opposing counsel would say, until he parked the truck and got in the car with his wife to go shopping. You're not saying that once you're a traveling employee, 24-7? Well, he's a traveling employee from the time he leaves with his truck at the beginning of the week until he returns and makes his departure from his truck with his stuff under the facts of this case. Didn't he do that? Didn't he park his truck? I mean, otherwise, in your logic, he would be a traveling employee. He'd be on the clock continuously. Well, in a way, he is, actually. He brought up the fact that he has to... His employer gives him a deadline to turn in his trip sheets on the following Saturday by midnight. So at some point, presumably, he's going to have to either retrieve the trip sheets from the truck or take them with him and drive to the pilot station. That's part of his employment. He would be in the course of his employment while he was doing that, just as he is in the course of his... as he returned to the course of employment when he went back to the truck to pick up his personal items. Maybe you should ask it a different way. When, in your opinion, would he not be on the clock any longer? When is he not a traveling employee? I think the first time he's not a traveling employee is when he gets into the car with his wife on his way home from the park day, because that would be considered his regular commute to and from where he begins his work week. I think he would not be considered a traveling employer in the course of his employment if he went home and watched a movie. I don't think he's a traveling employee while he's having dinner with his wife at Montana Lakes and shopping at Kmart. But he did reenter the course of his employment. His employer did not mandate when he had to come and go from that truck. He had possession of the truck the entire weekend. It's foreseeable that he would have brought five to six days' worth of clothes and bed sheets in order to perform his traveling work for the employer, and it's also foreseeable that he would have had to bring that from his truck when he made his final exit from the truck for the weekend to wash those clothes and bring them back the next following week. Okay, let's change the facts because it's an interesting case. Okay, so let's say that he actually does what he was supposed to do and do all his paperwork, put it in a package to fax it out of a pilot station. Okay, he did that that night. There was no requirement he did it that night, though. Huh? There was no requirement that he had to do it that night. When is it due to be faxed? Midnight on Saturday night, and he arrives back in Danville at 5 p.m. on Friday evening. Right, that's what I'm saying is that he gets it done. He faxes it, okay? Okay. And then Sunday after church, he says, Oops, I left my laundry and the souvenir mug for my wife in the cab of the truck. And he goes there to pick it up and falls. Has he re-entered his traveling employee status? I think he does because I think it's part of his return travel home to get those items and to be able to start his new work week he needs those items, too. Yes, I do believe that he would have re-entered his course even if he had taken that deviation. So you're saying for whatever reason he returns to the truck, even if it's to get his favorite pen, he returns to the status of a traveling employee. Is that your argument? I think it has to be more intimately tied to the travel, such as clothing and bed sheets and things like that. How is the mug tied in? How is that a necessity for travel? Well, that I think is foreseeable on the part of the employer, that he's a trucker, he's going to go to drugstops and possibly pick up a souvenir. For his wife, a traveling person needs to bring something home for the wife, right? Otherwise, he probably shouldn't come home. I don't know. A certain amount of logic to that point. I guess I'm trying to see the outer bounds of your interpretation of when somebody's a traveling employee and when they aren't. It seems to be a subjective standard. Whenever he needs to return to the truck, under your argument, for whatever reason he returns to the status of a traveling employee. That would make the law pretty chaotic, wouldn't it? Well, this is a unique situation. This is a unique set of facts. He's not an employee going to a fixed place of business in order to pick up, say, a sweater they left on their chair. I mean, that case has been tried before, the appellate court years ago, and that was deemed not compensable. This is a different situation. He's a traveling employee and has to keep his items that are necessary for travel in his truck. And I think that any time he does return to the truck, it would put him back in the course. We don't have to worry about that in this case. We're worried about whether or not his return that evening was reasonable and foreseeable. And think about it. If you just drove, I don't know how many hours they drive these days, but if you just drove to Danville and your wife is sitting there waiting for you, wouldn't you want to go eat, stretch your legs, do something else before you got out of the finish your duties for that evening? And I think it's really unfortunate here that Mr. Geordi didn't have that credibility finding against him. I truly believe that... You're not saying if he fell in the mall while dining with his wife. No, absolutely not. That's clearly a deviation from the course of his employment. However, if he had fallen in the mall two cities away and taken a break, I think that is in the course of his employment as a travel employee. But since he had parked his truck after the week's worth of travel and went back for the purpose of collecting the items he needed in order to complete that week's worth of travel, I think it places him back in the course of his employment. But what items? Admittedly, if he had gone back with the trip records, I think he would have a much stronger case. But you do have that credibility finding that says they don't believe that he went back there for that. He went back strictly to get personal items. So how do you overcome that argument that he has to have his favorite souvenir mug in his clothes because that's a necessary part of his work? I mean, how do you overcome that credibility finding against him? Well, because they didn't find it incredible that he had to find those items. He had reported statements taken closer in time to the accident where he indicated that's why he returned to his truck. So I don't think there's any dispute that's why he returned to his truck. The question we have to ask is whether or not that purpose falls within the purview of the course of his employment. And the standard, because you're saying he continues to be a travel employee, and he re-entered that status, is that reasonable? Is he able to go into his truck to retrieve his personal belongings? Absolutely. What's the significance of his failing to fill out the travel report immediately upon shutting down the truck as opposed to coming back to do it and doing it in the fashion he says he always does it? I don't think there is any significance. I think it shows that he's credible, honestly. He was honest about that, that he didn't follow the company policy. And I think it's foreseeable that someone wouldn't follow the company policy when you've got a due date 24 hours later. I don't think that matters. I think what we have to stick to are the facts that are not in dispute. And the fact that he returned to the truck to get his personal belongings, to get his laundry for the week, is not in dispute. And I do believe that carrying those items down, we also have to remember that he's carrying those items down a truck ladder type staircase. Now, that is also part of the reason he fell. He slipped on the ladder. That aspect of his injury obviously is a risk that he faces by virtue of his employment. So I think this is also a unique case where we can look at arising out of, in addition to him being a traveling employee, as a basis for, I mean, the rules that apply to arising out of in non-traveling employee cases could potentially put us in the ambit of a risk that faces him uniquely in his employment because it's a unique set of stairs that he has to take from his cab. I think we understand your argument. Sorry, it's not as clear as I'd like it to be. But for these reasons, I do believe that the circuit court was correct in reversing the commission. I ask this court to affirm the circuit court's order and to affirm the committee's decision on doing that. Thank you. No reply, counsel. Okay, well, thank you, counsel, both of your arguments in this matter. It will be taken under advisement and a written disposition shall...